# Exhibit F

**Fill in this information to identify the case:**

Debtor 1 In re SilverRock Development Company, LLC

Debtor 2 (Spouse, if filing) ____________

United States Bankruptcy Court for the: District of Delaware

Case number 24-11647-MFW

Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

1. **Who is the current creditor?**

   Cypress Point Holdings, LLC
   Name of the current creditor (the person or entity to be paid for this claim)

   Other names the creditor used with the debtor ____________

2. **Has this claim been acquired from someone else?**

   ☑ No
   ☐ Yes. From whom? ____________

3. **Where should notices and payments to the creditor be sent?**

   Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Name: Foley & Lardner LLP, attn: Shane Moses, Esq. | Name: |
| Number Street: 555 California Street, Ste. 1700 | Number Street: |
| City: San Francisco State: CA ZIP Code: 94104 | City: State: ZIP Code: |
| Contact phone: 415.438.6404 | Contact phone: |
| Contact email: smoses@foley.com | Contact email: |

   Uniform claim identifier for electronic payments in chapter 13 (if you use one):
   __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

4. **Does this claim amend one already filed?**

   ☑ No
   ☐ Yes. Claim number on court claims registry (if known) ______ Filed on ______ MM / DD / YYYY

5. **Do you know if anyone else has filed a proof of claim for this claim?**

   ☑ No
   ☐ Yes. Who made the earlier filing? ____________

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

6. **Do you have any number you use to identify the debtor?**
   - ☑ No
   - ☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

7. **How much is the claim?** $ 49,691,869.00 . **Does this amount include interest or other charges?**
   See attached Addendum
   - ☐ No
   - ☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**
   Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
   Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
   Limit disclosing information that is entitled to privacy, such as health care information.
   Promissory Note (see attached Addendum)

9. **Is all or part of the claim secured?**
   - ☐ No
   - ☑ Yes. The claim is secured by a lien on property.

   **Nature of property:**
   - ☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
   - ☐ Motor vehicle
   - ☐ Other. Describe: ____________________

   **Basis for perfection:** Recorded Deed of Trust (see attached Addendum)
   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

   **Value of property**: $__________________
   **Amount of the claim that is secured:** $__________________
   **Amount of the claim that is unsecured:** $__________________(The sum of the secured and unsecured amounts should match the amount in line 7.)

   **Amount necessary to cure any default as of the date of the petition:** $____________________

   **Annual Interest Rate** (when case was filed) 24.00 %
   - ☑ Fixed
   - ☐ Variable

10. **Is this claim based on a lease?**
    - ☑ No
    - ☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $____________________

11. **Is this claim subject to a right of setoff?**
    - ☑ No
    - ☐ Yes. Identify the property: ____________________

| | | |
|---|---|---|
| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br>☐ Yes. *Check one:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $____________________ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $____________________ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $____________________ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $____________________ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $____________________ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $____________________ |

* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 10/24/2024
MM / DD / YYYY

/s/ Shane J. Moses
Signature

**Print the name of the person who is completing and signing this claim:**

Name: Shane (First name) J. (Middle name) Moses (Last name)

Title: Of Counsel

Company: Foley & Lardner LLP
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: 555 California Street, Ste. 1700 (Number Street)
San Francisco (City) CA (State) 94104 (ZIP Code)

Contact phone: 415.438.6404 Email: smoses@foley.com

Case 24-50198-MFW Doc 1-6 Filed 08/04/26 Page 5 of 40

# ADDENDUM TO PROOF OF CLAIM

*In re SilverRock Development Company, LLC* - Case No. 24-11647-MFW
*In re SilverRock Phase I, LLC* - Case No. 24-11654-MFW
United States Bankruptcy Court
District of Delaware

## Summary of Basis of Claim

Cypress Point Holdings, LLC ("Cypress" or "Claimant") files this proof of claim (this "Proof of Claim") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") pursuant to rule 3003(c)(1) of the Federal Rules of Bankruptcy Procedure and section 501(a) of title 11 of the United States Code (the "Bankruptcy Code").

In support of this Proof of Claim, Cypress states as follows:

1. SilverRock Development Company, LLC ("SDC"); RGC PA 789, LLC; SilverRock Lifestyle Residences, LLC; SilverRock Lodging, LLC; SilverRock Luxury Residences, LLC; and SilverRock Phase I, LLC ("Phase I") (collectively, the "Debtors"), are the debtors-in-possession in Chapter 11 bankruptcy cases pending before the Bankruptcy Court, and jointly administered under the lead case of *In re SilverRock Development Company, LLC, et al.*, case no. 24-11647 (the "Bankruptcy Case"). The Debtors filed their petitions for relief on August 5, 2024 (the "Petition Date").

2. On or about November 28, 2022, Phase I, SDC, The Robert Green Company ("RGC"), and RGC La Quinta, LLC ("RGCLQ"), each as an obligor (collectively, the "Note Obligors")[1] delivered to Cypress that certain Amended and Restated Secured Installment Promissory Note (as amended, restated, supplemented, or otherwise modified from time to time, the "Cypress Prepetition Note"). A true and correct copy of the Cypress Prepetition Note is attached hereto as **Exhibit A**. The Cypress Prepetition Note superseded and restated in its entirety that certain Secured Installment Promissory Note delivered to Cypress by the Note Obligors on or about November 18, 2022, as required pursuant to that certain Settlement Agreement dated as of November 18, 2022, by and between Cypress, the Note Obligors, and certain other parties as set forth therein (as amended, restated, supplemented, or otherwise modified from time to time, including by that First Amendment dated November 28, 2022, the "Settlement Agreement" and together with the Cypress Prepetition Note and all additional agreements, documents, instruments and certificates executed, and any orders in connection therewith, or otherwise delivered in connection therewith or evidencing or securing any of the obligations thereunder, the "Cypress Prepetition Credit Documents").

3. The Cypress Prepetition Credit Documents evidence a debt owed by the Note Obligors in favor of Cypress in the original principal amount of $31,464,425 (the "Original

---

[1] RDC and Phase 1 are debtors in the Bankruptcy Case. RGC and RGCLQ are affiliated non-debtor parties.

Principal Amount"). By its terms, the Note is a joint and several obligation of each of the Note Obligors.

4. As of the Petition Date, the outstanding principal balance under the Cypress Prepetition Credit Documents, plus interest, fees, costs, and expenses due and owning thereunder, whether charged prior to or after the Petition Date, were due and owing to Cypress in the amount of not less than $49,691,869 (all such amounts, collectively, the "Cypress Prepetition Obligations").

5. Pursuant to the Cypress Prepetition Credit Documents, in order to secure the Cypress Prepetition Obligations, the Note Obligors granted to Cypress a lien on and security interest (the "Cypress Prepetition Liens") in certain collateral (the "Cypress Prepetition Collateral") including the "Property," as defined in that certain Second Deed of Trust and Fixture Filing with Assignment of Rents made by debtor SDC as the trustor and in favor of Cypress as the beneficiary dated as of November 18, 2022 (as amended, restated, supplemented or otherwise modified from time to time, the "Cypress Prepetition Deed of Trust"). The Cypress Prepetition Liens are duly perfected, as evidenced by, among other things, the recorded Cypress Prepetition Deed of Trust, a copy of which is attached hereto as **Exhibit B**. The Cypress Prepetition Deed of Trust was recorded in the Official Records of the Assessor-County Clerk-Recorder for Riverside County on November 30, 2022 as Document # 2022-0486431. The Cypress Prepetition Deed of Trust is second in priority to the prior voluntary lien granted to Poppy Bank by the SDC on the Property.

6. Section 1(a) of the Cypress Prepetition Note provides that the principal balance, together with accrued interest shall be paid in installments as set forth therein. Section 1(a) of the Cypress Prepetition Note further provides that all unpaid principal, accrued interest, and penalties due Cypress were to be paid not later than the majority date of September 30, 2023 (the "Maturity Date"). Section 1(b) of the Cypress Prepetition Note provides that, absent an Event of Default (as defined in section 2 thereof), the outstanding principal balance under the Cypress Prepetition Note bears interest at a fixed rate per annum equal to twenty-four percent (24%) per annum, accruing monthly, and compounding and added to the outstanding principal quarterly. Section 1(e) of the Cypress Prepetition Note provides that if any of the installment payment amounts therein are not paid when due, the Note Obligors shall owe Cypress a late payment penalty of 7.5%, as further set forth in the Cypress Prepetition Note.

7. After the delivery of the Cypress Prepetition Note, the Note Obligors defaulted on their payment obligations thereunder, by, among other things, failing to pay all amounts outstanding by the Maturity Date (as extended, modified, or amended from time to time), each of which constituted an Event of Default as defined in Section 2 of the Cypress Prepetition Note. Therefore, the Cypress Prepetition Note is in default, and was as of the Petition Date. Prepetition, Cypress notified the Obligors of the default, and on or about December 7, 2023, Cypress recorded a Notice of Default and Election to Sell Under Deed of Trust, in the Official Records of the Assessor-County Clerk-Recorder for Riverside County as Document # 2023-0363986 (the "Notice of Default"). On or about April 17, 2024, Cypress recorded a Notice of Trustee's Sale, in the Official Records of the Assessor-County Clerk-Recorder for Riverside County as Document # 2024-0111080. Thereafter, on or about May 7, 2024, Cypress recorded an Amended Notice of Trustee's Sale, in the Official Records of the Assessor-County Clerk-Recorder for Riverside

County as Document # 2024-0131662 (the "Notice of Sale"). The Notice of Sale states an amount due under the Cypress Prepetition Credit Documents of $45,550,467 as of April 17, 2024. The Trustee's sale noticed pursuant to the Notice of Sale was subsequently postponed by Cypress, most recently to August 6, 2024. Copies of the Notice of Default and Notice of Sale are attached hereto as **Exhibit C** and **Exhibit D**, respectively.

8. As of the Petition Date, Cypress hereby asserts a claim for the Cypress Prepetition Obligations in the total amount of not less than $49,691,869, consisting of the outstanding principal amount of $40,642,031, as of March 31, 2024, together with all additional interest, fees, charges, and legal fees accrued through the Petition Date in the amount of not less than $9,049,838, plus the following amounts that have continued to accrue after the Petition Date: (a) interest on all outstanding principal amounts until paid in full; (b) late charges, prepayment fees, and any other fees or charges payable under the terms of the Cypress Prepetition Credit Documents; and (c) Cypress's fees, costs, and expenses, including legal fees, reimbursable by the SDC and Phase I (together with the other Note Obligors) pursuant to the Cypress Prepetition Credit Documents.

9. Cypress may have additional prepetition and/or postpetition claims that are unliquidated as of the date hereof, including by not limited to attorneys' fees and expenses, and Cypress expressly reserves the right to amend this Proof of Claim to include such claims as they are liquidated.

**Rider to Proof of Claim**

This Proof of Claim is filed to protect Claimant from forfeiture of any claim. Claimant reserves the right to amend and/or supplement this Proof of Claim in any manner and/or to file additional or other proofs of claims for additional or other claims Claimant may have against the Debtors. All of Claimant's rights in law and equity are expressly preserved.

The filing of this Proof of Claim is not:

(a) a waiver or release of any security held by Claimant, any right of setoff, recoupment or counterclaim, any right arising by operation of law or equity or Claimant's rights against any other person, entity or property;

(b) a waiver or release of any right or claim of Claimant arising out of, or in respect of, any order entered in these cases, or any other claim, of any nature whatsoever, that Claimant has against the Debtors, their estates or any other person or entity;

(c) a waiver of the right to move for relief from the automatic stay or to withdraw the reference, or otherwise to challenge the jurisdiction of this Court, with respect to the subject matter of the claims asserted and, by filing this claim, Claimant does not consent, and shall not be deemed to have consented, to the jurisdiction of this Court for any purpose and files this proof of claim to avoid forfeiture of any claim or right, in law or equity;

(d) an election of any remedy to the exclusion, express or implied, or any other remedy;

(e) a ratification or consent to any obligations or liability based upon or arising out of any action, inaction or conduct by the Debtors and/or Claimant; or

(f) a waiver of any right to enforce any judgment obtained in a state court action against the Debtors, the Debtors' property, any third person or entity, or any other property, including, without limitation, any proceeds of insurance.

**Notices**

All notices in respect of Claimant's Proof of Claim are to be sent to:

Shane J. Moses, Esq.
Foley & Lardner LLP
555 California Street, Suite 1700
San Francisco, CA 94104

and,

Rick Palacio, Esq.
Ashby & Geddes
500 Delaware Avenue
Wilmington, DE 19899

The request for copies of notices to be sent to the persons above shall not be deemed authorization to accept service of process on behalf of Claimant.

# **EXHIBIT A**

**THIS NOTE HAS NOT BEEN REGISTERED WITH THE SECURITIES AND EXCHANGE COMMISSION OR THE SECURITIES COMMISSION OF ANY STATE. THESE SECURITIES HAVE BEEN SOLD IN RELIANCE UPON AN EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), AND, ACCORDINGLY, MAY NOT BE OFFERED OR SOLD EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT OR PURSUANT TO AN AVAILABLE EXEMPTION FROM, OR IN A TRANSACTION NOT SUBJECT TO, THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT AND IN ACCORDANCE WITH APPLICABLE STATE SECURITIES LAWS.**

**AMENDED AND RESTATED SECURED INSTALLMENT PROMISSORY NOTE**

| | |
|---|---|
| **Issuance Date: November 28, 2022** | **Original Principal Amount: $31,464,425** |
| **Note No. 1** | |

**FOR VALUE RECEIVED**, **SilverRock Phase I, LLC** ("SilverRock"), **SilverRock Development Company, LLC** ("SRDC"), **The Robert Green Company** ("RGC"), **RGC La Quinta, LLC** ("RGCLQ" and together with SilverRock, SRDCs, RGC and RGCLQ individually a "Note Obligor" and collectively, the "Note Obligors"), hereby jointly and severally promise to pay to the order of **Cypress Point Holdings, LLC** ("Cypress") or registered assigns permitted under the terms of the Purchase and Settlement Agreement (as defined below) (together with Cypress, the "Payee"), the amount set out above as the Original Principal Amount, as reduced pursuant to the terms hereof pursuant to installment payments, optional or mandatory prepayments or otherwise (the "Principal"), when due, whether upon the Maturity Date (as defined below), acceleration or otherwise (in each case in accordance with the terms hereof) and to pay interest ("Interest") on any outstanding Principal at the applicable Interest Rate from November 1, 2022 until the same becomes due and payable, upon the Maturity Date or acceleration or otherwise (in each case in with the terms hereof).

The Original Principal Amount is Thirty-One Million, Four Hundred and Sixty Four Thousand, Four Hundred and Twenty Five Dollars ($31,464,425). For purposes hereof, the term "Outstanding Balance" means the Original Principal Amount, as reduced by payment or increased, as the case may be, pursuant to the terms hereof as a result of penalty payments, prepayment penalties breach hereof or otherwise, plus any accrued but unpaid interest, collection and enforcements costs, and any other fees or charges incurred under this Note

This Note is (a) being issued pursuant to the terms of a Settlement Agreement and Agreement for Purchase and Redemption of Membership Interest (the "Purchase and Settlement Agreement") dated as of November 18, 2022, as amended by a First Amendment dated November 28, 2022 (the "First Amendment") between and among the Note Obligors, **Robert S. Green, Jr**. ("Green"), and **Fred Schuster** ("Schuster" and together with Green and the Note Obligors, the "SilverRock Parties") and Cypress, **William Trzos** ("Trzos"), and **Ken Manqueros** ("Manqueros" and together with Cypress and Trzos, the "Cypress Parties") and exhibits thereto of which this Note is **Exhibit 1** to the First Amendment and (b) is secured by the "DOT" hereinafter defined which is **Exhibit 2** to the Purchase and Settlement Agreement (collectively, the "Transaction Documents"). Unless otherwise defined herein, all capitalized terms, when used in this Note, shall have the same meaning as they are defined in the Purchase and Settlement Agreement.

This Note supersedes, amends and restates in its entirety, the secured installment promissory note dated November 18, 2022 (the "Prior Note"); which Prior Note is hereby rendered null and void, ***ab initio***.

1. GENERAL TERMS

(a) Payment of Principal. The Principal of this Note, together with all accrued interest hereon at the Interest Rate, shall be due and payable in the following monthly installments:

- By November 30, 2022, or immediately upon closing of the construction loan for the Montage Residences that the SilverRock Parties are obtaining from Builders Capital ("BC"), the Note Obligors shall pay Payee the sum of $500,000;
- By not later than December 31, 2022, the Note Obligors shall pay to Payee the sum of $800,000;
- By not later than January 15, 2023 (the "Initial Payment Due Date"), the Note Obligors shall pay to the Payee an initial installment payment of $7.5 million (the "Initial Payment");
- The Note Obligors will pay the sum of $1.6 million to Payee by January 31, 2023;
- The Note Obligors will pay the sum of $1.6 million to Payee by February 28, 2023;
- Payee will receive an installment payment of $7.0 million by March 15, 2023;
- The Note Obligors will pay the sum of $1.6 million to Payee by March 31, 2023;
- The Note Obligors will pay the sum of $2.4 million to Payee by April 30, 2023;
- The Note Obligors will pay the sum of $2.4 million to Payee by May 31, 2023;
- The Note Obligors will pay the sum of $2.4 million to Payee by June 30, 2023;
- The Note Obligors will pay the sum of $3.2 million to Payee by July 31, 2023;
- The Note Obligors will pay the sum of $3.2 million to Payee by August 31, 2023; and
- The Note Obligors will pay the remaining balance of this Note, including all unpaid Principal, accrued interest at the Interest Rate, and penalties, if any (collectively, the "Note Obligations"), to Payee by September 30, 2023 (the "Maturity Date").

Notwithstanding the foregoing installment payment schedule, Payee shall forbear from enforcing its rights and remedies under this Note and the DOT unless and until: (i) April 15, 2023, if Payee has not received at least $6.0 million in cumulative payments under the Note by April 15, 2023; or (ii) 30 days following the Maturity Date, if the Note Obligors have not fully paid to Payee and satisfied all outstanding monetary obligations to Payee under the Transaction Documents, including principal, interest, and fees.

(b) Interest. Interest shall accrue from November 1, 2022 on the Original Principal Amount at an annual rate of twenty-four percent (24%) (the "Interest Rate"). Interest shall accrue monthly and shall be added to the outstanding Principal quarterly (compounded quarterly). All accrued interest shall be fully paid on the Maturity Date (or sooner as provided herein) to the Payee.

(c) Optional Prepayment. The Note Obligors shall have the option to pre-pay any portion of the Note Obligations at any time or from time to time without fee or prepayment penalty, and any such prepayments shall be applied (i) first, to pay any outstanding accrued and unpaid interest and (ii) next, to reduce the amount of the then outstanding principal amount of this Note in the order of the earliest maturing monthly installments that are due under this Note. Notwithstanding the above, if the Note Obligors prepay the entire Note Obligations on or before April

1, 2023, the Note Obligors shall pay a prepayment penalty or of $1,000,000 which shall be added to the Note Obligations at the time of prepayment

(d) Mandatory Prepayments. In the event and to the extent that any of the Note Obligors shall receive "available proceeds" from the proceeds from: (a) the EB-5 Preferred Equity Take-Out capital contributed to the SilverRock La Quinta development project; and/or (b) the construction loans for the commercial components of the SilverRock La Quinta development project if such commercial component construction loans generate proceeds that the lender allows to be classified as "reimbursement for work in place," the Note Obligors shall use such "available proceeds" as a mandatory prepayment against the earliest maturing monthly installments due under this Note; provided, that such mandatory prepayment(s) shall be subject to the lender's approval, and only if and to the extent the project development activity does not require those funds to be used for development project costs at that time.

(e) Penalties for Late Payments. If any of the scheduled monthly installment payments on this Note described in Section 1(a) above (with the exception of the $7.0 million installment payment) are not paid in full by the scheduled payment date (or the next business day if the scheduled payment date is not a business day), the Note Obligors shall owe Cypress a late payment penalty in the amount 7.5% of the unpaid amount of the scheduled monthly installment payment.

With respect to the Initial Installment Payment due on January 15, 2023, if not paid by February 15, 2023, an *additional* late payment penalty in the amount 7.5% of the unpaid amount of the Initial Installment Payment shall be owed to Cypress by the Note Obligors.

In the event that the Promissory Note is not paid in full on the Maturity Date, an *additional* 7.5% penalty shall attach to any such unpaid amount (such that, when combined with penalties provided for above, the total cumulative penalty that shall attach to any outstanding amount unpaid by the Maturity Date shall be 15% of such unpaid amount).

Each such penalty amount shall be added to the outstanding Note Obligations and shall be secured by the DOT. However, other than a failure by the Note Obligors to satisfy and pay: (a) a cumulative total of at least $6.0 million to Payee in payments under the Note by April 15, 2023, or (b) the entire outstanding amount of all Note Obligations (including all accrued interest at the Interest Rate and applicable penalties) that are due and payable under this Note by no later than October 31, 2023, which failures shall constitute an Event of Default under the Purchase and Settlement Agreement, as amended, this Note and the DOT, no missed or late installment payment shall constitute an Event of Default. If and only if an Event of Default shall occur and shall continue after April 15, 2023 or October 31, 2023, as applicable, shall the provisions of Section 2 of this Note be applicable.

With respect to the installment payment of $7.0 million that is scheduled to be paid by March 15, 2023, a late penalty fee of 7.5% of any unpaid portion of that installment payment shall be owed by the Note Obligors to Payee if the scheduled payment is not paid in full to Cypress by March 15, 2023, *and* any such payment deficiency is not fully cured by the Note Obligors by April 15, 2023. For avoidance of doubt, the 7.5% penalty shall be assessed only upon the amount of the scheduled $7.0 million installment payment, if any, that is not fully-satisfied by April 15, 2023.

(f) Reference is made to Section 2(g) of the Purchase and Settlement Agreement. Subject at all times to the provisions of Section 1(g) of this Note, if Cypress fails to execute and deliver such form of Acknowledgement or Subordination contemplated by Section 2(g) of the Purchase and Settlement Agreement within five business days of being requested in writing to do so, the Note Obligors' obligation to make payments under this Note are suspended, without penalties or fees accruing, until such time as Cypress has complied with Section 2(g) of the Purchase and Settlement Agreement, and any failure to make a payment under the Note during such period of suspension of the payment obligation shall not constitute an Event of Default under this Note, the DOT, or the Purchase and Settlement Agreement.

(g) The SilverRock Parties have represented to the Cypress Parties and hereby warrant that (i) the appraisal dated July 1, 2022 (the "Current Appraisal") of fair market value of the real property and improvements representing the collateral under the DOT (the "DOT Property") reflects a value upon sale or foreclosure sufficient to

pay the entirety of the indebtedness to Cypress evidenced by this Note after payment of all construction loans, mortgages, deeds of trust or other liens on such DOT Property that are senior to the lien evidenced by the DOT (the "Senior Indebtedness") , (ii) in no event shall the Senior Indebtedness encumbering the DOT Property exceed seventy-five percent (75%) of the then appraised fair market value of the DOT Property on each occasion that Senior Indebtedness shall be increased; and (iii) none of the Note Obligors will over encumber, transfer or otherwise assign any of their assets (including but not limited to the DOT Property) to avoid or frustrate the ability of Cypress to collect all obligations evidenced by this Note and secured by the DOT. A violation of the provisions of this Section 1(g) shall constitute and Event of Default under this Note and the DOT and, if not cured within 15 days of such violation, entitle the Payee to exercise all of its rights and remedies hereunder and thereunder.

(h) Security. As collateral to secure payment of all Note Obligations, the Note Obligors have granted to Payee a Second Deed of Trust against certain property owned by SRDC in the form attached as **Exhibit 2** to the Purchase and Settlement Agreement (the "DOT").

2. EVENTS OF DEFAULT.

Whenever used herein, an "Event of Default" means the occurrence and continuation of any one of the following events, whatever the reason, and whether it shall be voluntary or involuntary, or effected by operation of law or pursuant to any judgment, decree or order of any court, or any order, rule, or regulation of any administrative or governmental body:

(a) The Note Obligors' failure to have paid to the Payee in cash by wire transfer of immediately available funds a total of at least $6.0 million in payments under the Note by 5:00 p.m. Pacific time on April 15, 2023;

(b) The Note Obligors' failure to pay to the Payee in cash by wire transfer of immediately available funds all outstanding Note Obligations (including accrued interest at the Interest Rate and penalties) by 5:00 p.m. Pacific time on October 31, 2023;

(c) A breach by any of the Note Obligors of the provisions of Section 1(g) of this Note that, if capable of cure, is not fully cured within 15 days from the date such breach has occurred; or

(e) Any of the Note Obligors shall commence, or there shall be commenced against such Note Obligors under any applicable bankruptcy or insolvency laws as now or hereafter in effect or any successor thereto, or any of the Note Obligors commences any other proceeding under any reorganization, arrangement, adjustment of debt, relief of debtors, dissolution, insolvency or liquidation or similar law of any jurisdiction whether now or hereafter in effect relating to any of the Note Obligors or there is commenced against any of the Note Obligors any such bankruptcy, insolvency or other proceeding which remains undismissed for a period of ninety-one (91) days; or any of the Note Obligors is adjudicated insolvent or bankrupt; or any order of relief or other order approving any such case or proceeding is entered; or any of the Note Obligors suffers any appointment of any custodian, private or court appointed receiver or the like for it or any substantial part of its property which continues undischarged or unstayed for a period of ninety-one (91) days; or any of the Note Obligors makes a general assignment for the benefit of creditors; or any of the Note Obligors shall fail to pay, or shall state that it is unable to pay, or shall be unable to pay, its debts generally as they become due; or any of the Note Obligors shall call a meeting of its creditors with a view to arranging a composition, adjustment or restructuring of its debts; or any of the Note Obligors or shall by any act or failure to act expressly indicate its consent to, approval of or acquiescence in any of the foregoing; or any corporate or other action is taken by any of the Note Obligors or for the purpose of effecting any of the foregoing.

3. REMEDIES. If an Event of Default under this Note shall occur, Payee shall have the absolute right to accelerate all Note Obligations, foreclose upon the property secured by the DOT, and obtain a judgment against each of the Note Obligors under the Agreement and this Note pursuant to the Stipulated Agreement for Retention of Jurisdiction for Enforcement of Settlement Under Code of Civil Procedure Section 664.6.

4. REISSUANCE OF THIS NOTE.

Upon receipt by the Note Obligors of evidence reasonably satisfactory to such Note Obligors of the loss, theft, destruction or mutilation of this Note, and, in the case of loss, theft or destruction, of any indemnification undertaking by the Payee to the Note Obligors in customary form and, in the case of mutilation, upon surrender and

cancellation of this Note, the Note Obligors shall execute and deliver to the Payee a new Note representing the outstanding Note Obligations.

5. NOTICES. Any notices, consents, waivers or other communications required or permitted to be given under the terms shall be handled according to the Notice clause in the Agreement and shall be sent by registered or certified mail or by electronic mail to the addresses for such communications as set forth in the Agreement and the other Transaction Documents.

6. CONSTRUCTION OF THE TRANSACTION**. Each of the Note Obligors and the Cypress Parties expressly acknowledge and agree that the Agreement and the payment of the Purchase Price pursuant to this Note represents the negotiated purchase and redemption of Cypress' Class A Preferred Equity Membership Interests in SilverRock and does not constitute a loan or forbearance.** In addition, each of the Note Obligors acknowledges and agrees that (a) the terms of this Note, including the penalty provisions hereof, have been fully negotiated by the Note Obligors with Cypress and the other Cypress Parties; and (b) that the agreement of the Cypress Parties to impose penalties on late or non-payments of certain of the installment payment required to be paid under this Note, in lieu of accelerating this Note and declaring an Event of Default, is of material benefit to the Note Obligors. Accordingly, each of the Note Obligors do hereby waive any and all defenses to the ability of Payee to collect all Note Obligations and agree not to assert any claim or defense of usury by reason of the obligation to make penalty payments in addition to interest payments at the Interest Rate.

7. APPLICABLE LAW AND VENUE. This Note shall be governed by and construed in accordance with the laws of the State of California, without giving effect to conflicts of laws thereof. Any action brought by either party against the other concerning the transactions contemplated by this Agreement shall be brought only in the United States District Court or California Superior Court located in San Diego County, in the State of California (the "Court"). All parties and the individuals signing this Note agree to submit to the jurisdiction of such Court.

8. WAIVER. Any waiver by the Payee of a breach of any provision of this Note shall not operate as or be construed to be a waiver of any other breach of such provision or of any breach of any other provision of this Note. The failure of the Payee to insist upon strict adherence to any term of this Note on one or more occasions shall not be considered a waiver or deprive that party of the right thereafter to insist upon strict adherence to that term or any other term of this Note. Any waiver must be in writing.

9. MISCELLANEOUS

(a) Lawful Money; Costs of Collection. All amounts payable hereunder are payable in lawful money of the United States. The Note Obligors agree to pay all costs of collection when incurred, including reasonable attorneys' fees and costs, whether or not a suit or action is instituted to enforce this Note, including but not limited to court costs and fees, , to the extent permitted by applicable law.

(b) No Offset; Payee in Due Course. All payments under this Note made by or on behalf of any of the Note Obligors shall be made without setoff or counterclaim and free and clear of, and without deduction or withholding for or on account of, any federal, state, or local taxes. Each of the Note Obligors waives any right of offset it now has or may hereafter have against Cypress, any Cypress Parties or other Payee and its successors and assigns as to this Note and agrees to make the payments called for hereunder in accordance with the terms hereof. The holder hereof and all successors thereof shall have all the rights of a holder in due course as provided in the California Uniform Commercial Code and other laws of the State of California.

(c) Waivers. Each of the Note Obligors and any endorsers, guarantors or sureties hereof severally waive presentment and demand for payment, notice of intent to accelerate maturity, protest or notice of protest or nonpayment, bringing of suit and diligence in taking any action to collect any sums owing hereunder or in proceeding against any of the rights and properties securing payment hereunder; expressly agree that this Note, or any payment hereunder, may be extended from time to time; and consent to the acceptance of further security or the release of any security for this Note, all without in any way affecting the liability of each Note Obligor and any endorsers or guarantors hereof. No extension of time for the payment of this Note, or any installment hereof, made by agreement by the holder hereof with any person now or hereafter liable for the payment of this Note, shall affect the original

liability under this Note of the Note Obligors, even if the Note Obligors (or any entity comprising the Note Obligors) is not a party to such agreement.

(d) Usury Protection. The parties hereto intend to conform strictly to the applicable usury laws. In no event, regardless of any provisions contained therein or in any other document executed or delivered in connection herewith, shall the holder hereof ever be deemed to have contracted for or be entitled to receive, collect or apply as interest on this Note, any amount in excess of the maximum amount permitted by applicable law (the "Maximum Rate"). In no event, whether by reason of demand for payment, prepayment, acceleration of the maturity hereof or otherwise, shall the interest contracted for, charged or received by the holder hereunder or otherwise exceed the Maximum Rate. If for any circumstance whatsoever interest would otherwise be payable to the holder in excess of the maximum lawful amount, the interest payable to the holder shall be reduced automatically to the Maximum Rate and any payment received in excess of such amount shall be applied to the outstanding principal balance of the Note. Notwithstanding the foregoing, as set forth in Section 6 of this Note, each of the Note Obligors acknowledges and agrees the penalty payments required to be made hereunder do ***not*** constitute additional interest.

(e) Entire Agreement. This Note, the Purchase and Settlement Agreement the other Transaction Documents, and all other documents and instruments contemplated hereby and thereby together constitute the entire agreement between and among the parties pertaining to the subject matter hereof. No supplement, modification or amendment of this Note shall be binding unless executed in writing, as set forth in Section 9 below. No waiver shall be binding unless executed in writing, as set forth in Section 9 below. No provision of this Note shall be interpreted for or against the drafting party.

(f) Commercial Purpose. The Payee agrees that no funds advanced under this Note shall be used for personal, family or household purposes, and that all funds advanced hereunder shall be used solely for business, commercial, investment or other similar purposes.

(g) Successors and Assigns. All the terms and provisions of this Note shall be binding upon and inure to the benefit of the parties to this Note and their respective permitted successors and assigns.

(h) Assignment. The Note Obligors may not, voluntarily or involuntarily, directly or indirectly, by operation of law or otherwise, sell, transfer, assign, hypothecate, pledge or in any way alienate this Note or any right or interest in this Note (each a "Transfer") without Payee's prior written consent, which Payee may withhold in its sole and absolute discretion. Any consent by Payee to any Transfer shall not constitute consent to any other Transfer. Payee may freely Transfer its interest, rights, or title in or to this Note in Payee's sole and absolute discretion subject to applicable law and the other Transaction Documents. Notwithstanding the above, unless the Note Obligors fail to fully pay all obligations (including principal, accrued interest and penalties) owed to Payee under the Note by the Maturity Date, and fail to cure any such payment deficiency by October 31, 2023, Payee shall not assign, hypothecate, sell, or assign this Note or the DOT without prior written approval of the senior lender holding a senior security interest in the property set forth in the DOT.

(i) Construction. Whenever used in this Note, the terms "including," "include," "includes" and the like are not intended as terms of limitation, and, hence, shall be deemed to be followed by "without limitation."

(j) Severability. If any provision of this Note, as applied to any party or to any circumstance, shall be found by a court of competent jurisdiction to be void, invalid or unenforceable, the same shall in no way affect any other provision of this Note, the application of any such provision in any other circumstance, or the validity or enforceability of this Note, and any provision which is found to be void, invalid or unenforceable shall be curtailed and limited only to the extent necessary to bring such provision within the requirements of the law.

(k) Survival of Terms. The terms and provisions of this Note shall survive the Maturity Date until full payment of all amounts due hereunder.

(l) Preferential Payment. If at any time any payment made pursuant to this Note is deemed to have been a voidable preference, fraudulent conveyance or other similar conveyance or preferential payment under any bankruptcy, insolvency or other debtor relief or similar law, then the obligation to make such payment shall

survive any cancellation or satisfaction of this Note or return of this Note to the Note Obligors and shall not be discharged or satisfied with any such payment or cancellation. Such payment shall instead remain a valid and binding obligation enforceable in accordance with the terms of this Note and shall be immediately due and payable.

(m) Relief From Stay. As an additional inducement to and material consideration for Payee agreeing to execute this this Note and the other Transaction Documents, each of the Note Obligors agrees that in the event a Bankruptcy or Judicial Action (as hereinafter defined in this Section 9(m)) is commenced which subjects Payee to any stay in the exercise of Payee's rights and remedies under this Note or the other Transaction Documents, including, but not limited to, the automatic stay imposed by Section 362 of the United States Bankruptcy Code (individually and collectively, "Stay"), then each of the Note Obligors irrevocably consents and agrees that such Stay shall automatically be lifted and released against Payee, and Payee shall thereafter be entitled to exercise all of its rights and remedies against the Note Obligors that is or could be subject any Stay under this Note or the other Transaction Documents. Nothing contained herein shall limit or prevent Payee from exercising all of its rights and remedies against any of the Note Obligors that is not the subject any Stay under this Note or the other Transaction Documents. Each of the Note Obligors acknowledges that he or it is knowingly, voluntarily, and intentionally waiving its rights to any Stay and agrees that the benefits provided to the Note Obligors under the terms of this Note are valuable consideration for such waiver. As used in this Section 9(m), the term "Bankruptcy or Judicial Action" shall mean any voluntary or involuntary case filed by or against the any of the Note Obligors under the United States Bankruptcy Code, or any voluntary or involuntary petition in composition, readjustment, liquidation, or dissolution, or any state and federal bankruptcy law action filed by or against any of the Note Obligors, any action where the Note Obligors is adjudicated as bankrupt or insolvent, any action for dissolution of the Note Obligors, or any action in furtherance of any of the foregoing, or any other action, case, or proceeding that has the effect of staying (or in which a stay is being obtained against) the enforcement by Payee of its rights and remedies under the this Note or the other Transaction Documents.

Except to enforce the terms of the Transaction Documents, the Note Obligors shall not take any action and shall not fail to take any action which such action or omission will or might tend to interfere with, delay, enjoin or otherwise prohibit the commencement, continuation or completion of efforts by Payee to enforce its remedies under this Note or the other Transaction Documents, or applicable law. Without limiting the generality of the foregoing and except to enforce the terms of the Transaction Documents, each of the Note Obligors waives its rights, if any, to seek or obtain a stay, injunction or other form of order prohibiting in any way any act necessary or appropriate for the commencement or completion of Payee's enforcement of its remedies under the this Note or the other Transaction Documents, or applicable law (without limiting the generality of the foregoing, such waiver extends to such rights which may exist under any statute or rule relating to bankruptcy cases, including, without limitation, 11 U.S.C. § 105, 11 U.S.C. § 301, 11 U.S.C. § 302, 11 U.S.C. § 303, 11 U.S.C. § 304, 11 U.S.C. § 362, 11 U.S.C. § 348, 11 U.S.C. § 706, 28 U.S.C. § 157, 28 U.S.C. § 158, Federal Rule of bankruptcy Procedure ("FRBP") 3007, FRBP 3008, FRBP 3012, FRBP 8005, FRBP 9023, FRBP 9024, or FRBP 9029).

10. AMENDMENT AND WAIVER OF RIGHTS. This Note may be amended and the observance of any term hereof may be waived (either generally or in a particular instance either retroactively or prospectively) only by a written instrument executed by the Note Obligors and the Payees of a majority of the aggregate Outstanding Balance of all of the Notes on the date of such amendment.

11. WAIVER OF RIGHT TO TRIAL BY JURY.

EACH PARTY TO THIS NOTE HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION (1) ARISING UNDER THIS NOTE, THE OTHER TRANSACTION DOCUMENTS, OR ANY OTHER INSTRUMENT, DOCUMENT, OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION THEREWITH, OR (2) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THIS NOTE OR ANY OTHER INSTRUMENT, DOCUMENT, OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND EACH PARTY HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY. THE PARTIES HERETO HEREBY AGREE THAT THE PROVISIONS CONTAINED

HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH BOTH SIDES AGREEING TO THE SAME KNOWINGLY AND BEING AFFORDED THE OPPORTUNITY TO HAVE THEIR RESPECTIVE LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN. ANY PARTY TO THIS NOTE MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY AND THE AGREEMENTS CONTAINED HEREIN REGARDING THE APPLICATION OF JUDICIAL REFERENCE IN THE EVENT OF THE INVALIDITY OF SUCH JURY TRIAL WAIVER.

11. Costs of Collection. In the event that an Event of Default shall occur and be continuing and Payee shall be required to enforce its rights and remedies under this Note, the DOT, Stipulation for Retention of Jurisdiction, and the Stipulation Agreement for Enforcement of Settlement and Entry of Judgment, the Note Obligors shall be jointly and severally liable to pay all of Payee's costs and expenses including reasonable legal fees incurred from and after the occurrence of such Event of Default incurred in connection with such enforcement actions.

IN WITNESS WHEREOF, each Note Obligor has caused this Note to be duly executed by them and by a duly authorized officer as of the date set forth above.

SILVERROCK PHASE I, LLC

DocuSigned by:

By: 7F1C55132A14454...

Its: Manager

SILVERROCK DEVELOPMENT COMPANY, LLC

DocuSigned by:

By: 7F1C55132A14454...

Its: Manager

THE ROBERT GREEN COMPANY

DocuSigned by:

By: 7F1C55132A14454...

Its: President & CEO

RGC LA QUINTA, LLC

DocuSigned by:

By: 7F1C55132A14454... :

Its: Manager

# EXHIBIT B

DOC #2022-0486431
11/30/2022 01:24 PM Fees: $317.00
Page 1 of 11
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**This document was electronically submitted to the County of Riverside for recording**
Receipted by: LISA #580

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Cypress Point Holdings, LLC
PO Box 929100
San Diego, CA 92192

Attn: Mr. Ken Manqueros

**SPACE ABOVE THIS LINE FOR RECORDER'S USE**

# SECOND DEED OF TRUST AND FIXTURE FILING WITH ASSIGNMENT OF RENTS
(This Deed of Trust contains an acceleration clause)

This SECOND DEED OF TRUST AND FIXTURE FILING WITH ASSIGNMENT OF RENTS ("Deed of Trust"), made and effective as of November 18, between SilverRock Development Company, LLC, a Delaware limited liability company, herein called "TRUSTOR," whose address is 343 Fourth Avenue, San Diego, California 92101, Fidelity National Title Insurance Company, a Florida corporation or its designated affiliate or nominee, herein called "TRUSTEE," and Cypress Point Holdings, LLC Nevada limited liability company, herein called "BENEFICIARY".

WITNESSETH: That Trustor does hereby give, grant, bargain, sell, warrant, convey, mortgage, transfer, grant a security interest in, set over, deliver, confirm and convey unto Trustee, in Trust, with Power of Sale and right of entry upon the terms and conditions of this Deed of Trust that property in the County of Riverside, State of California, as described in <u>Exhibit A</u> incorporated herein by reference, together with all buildings, structures, facilities and other improvements now or hereafter located on the property, and all building material, building equipment, supplies and fixtures of every kind and nature now or hereafter located on the property or attached to, contained in or used in connection with any such buildings, structures, facilities or other improvements, and all appurtenances and additions thereto and betterments, renewals, substitutions and replacements thereof, and the rents, issues and profits of all of the foregoing, owned by Trustor or in which Trustor has or shall acquire an interest (collectively, the "Property"), subject, however, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits for the purpose of securing (1) payment of all obligations at any time owing under that certain Promissory Note payable by Trustor, SilverRock Phase I, LLC, The Robert Green Company and RGC La Quinta, LLC, collectively as maker, to the order of Beneficiary or order, executed concurrently herewith (the "Note"), evidencing a loan from Beneficiary to Trustor in the original principal amount of $31,464,425.00, and (2) the performance of each agreement and obligation of Trustor incorporated by reference or contained herein and all costs of enforcement thereof and hereof.

If the Trustor shall sell or convey said Property or shall be divested of its title or any interest therein in any manner or way, whether voluntarily or involuntarily, without the written consent of the Beneficiary being first had and obtained, Beneficiary shall have the right, at its option, except

4890-6253-4719.1

as prohibited by law, to declare any indebtedness or obligations secured hereby, irrespective of the maturity date specified in any note evidencing the same, immediately due and payable.

SURETYSHIP WAIVERS. Given that the maker under the Note includes persons in addition to Trustor, to the extent that the laws of the State of California would characterize Trustor as a guarantor or surety by virtue of Trustor's undertakings hereunder, Trustor makes the following waivers:

a. Trustor hereby waives the rights and benefits under California Civil Code (“**CC**”) Section 2819, and agrees that by doing so Trustor's liability shall continue even if the Beneficiary alters in any respect any obligations under Note which are deemed guaranteed by Trustor (for the purpose of this Suretyship Waivers Section such obligations are, collectively, the “Guaranteed Obligation”) or the Beneficiary's remedies or rights against any maker under the Note (each, an “**Obligor**”) are in any way impaired or suspended without Trustor's consent.

b. Trustor hereby waives any and all benefits and defenses under CC Section 2810 and agrees that by doing so Trustor is liable even if the Obligor had no liability at the time of execution of the Note or thereafter ceased to be liable. Trustor hereby waives any and all benefits and defenses under CC Section 2809 and agrees that by doing so Trustor's liability may be larger in amount and more burdensome than that of the Obligor.

c. Trustor hereby waives any and all benefits and defenses under CC Sections 2845, 2849, 2850, 2899 and 3433, including, without limitation, the right to require the Beneficiary to (i) proceed against the Obligor or any other guarantor or pledgor, (ii) proceed against or exhaust any security or collateral the Beneficiary may hold, or (iii) pursue any other right or remedy for Trustor's benefit, and agrees that the Beneficiary may proceed against Trustor for the Guaranteed Obligation without taking any action against the Obligor or any other guarantor or pledgor and without proceeding against or exhausting any security or collateral the Beneficiary holds. Trustor agrees that the Beneficiary may unqualifiedly exercise in its sole and absolute discretion, any or all rights and remedies available to it against the Obligor or any other guarantor or pledgor without impairing the Beneficiary's rights and remedies in enforcing the provisions of this Deed of Trust as to which Trustor is a guarantor or surety under the provisions of California law, under which Trustor's liabilities shall remain independent and unconditional. Trustor agrees that the Beneficiary's exercise of certain of such rights or remedies may affect or eliminate Trustor's right of subrogation or recovery against the Obligor and that Trustor may incur partially or totally non-reimbursable liability under this Deed of Trust. Without limiting the generality of the foregoing, Trustor expressly waives any and all benefits and defenses under or based upon (1) California Code of Civil Procedure (“**CCP**”) Section 580a or 726(b), which would otherwise limit Trustor's liability after a non-judicial or judicial foreclosure sale to the difference between the obligations guaranteed herein and the fair market value or fair value, respectively, of the Premises or interests sold at such non-judicial or judicial foreclosure sale, (2) CCP Sections

580b and 580d, which would otherwise limit the Beneficiary's right to recover a deficiency judgment with respect to purchase money obligations and after a non-judicial or judicial foreclosure sale, respectively, (3) CCP Section 726 which, among other things, would otherwise require the Beneficiary to exhaust all of its security before a personal judgment may be obtained for a deficiency, and (4) Union Bank v. Gradsky or subsequent judicial decisions arising out of or related to CCP Sections 726, 580a, 580b or 580d.

d. Without limiting the generality of the foregoing, Trustor waives all rights and defenses arising out of an election of remedies by the Beneficiary, even though that election of remedies, such as a nonjudicial or judicial foreclosure with respect to security for a Guaranteed Obligation, has destroyed Trustor's rights of subrogation and reimbursement against the Obligor by the operation of Section 580d of the California Code of Civil Procedure or otherwise. In addition, Trustor waives all rights and defenses that Trustor may have because the Guaranteed Obligation is secured by real property. This means, among other things:

(1) The Beneficiary may collect from Trustor without first foreclosing on any real or personal property collateral pledged by any other Obligor.

(2) If the Beneficiary forecloses on any real property collateral pledged by any other Obligor:

(a) The amount of the Guaranteed Obligation may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price.

(b) The Beneficiary may collect from Trustor even if the Beneficiary, by foreclosing on the real property collateral, has destroyed any right Trustor may have to collect from the Obligor.

This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because the Guaranteed Obligation is secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d or 726 of the California Code of Civil Procedure.

e. Trustor hereby waives all benefits and defenses under CC Sections 2847, 2848 and 2849 and agrees that Trustor shall have no right of subrogation or reimbursement against the Obligor, no right of subrogation against any collateral or security provided for the Note and no right of contribution against any other guarantor or pledgor unless and until all amounts due under the Note have been paid in full and the Beneficiary has released, transferred or disposed of all of its right, title and interest in any collateral or security. To the extent Trustor's waiver of these rights of subrogation, reimbursement or contribution as set forth herein is found by a court of competent jurisdiction to be void or voidable for any reason, Trustor agrees that Trustor's rights of subrogation and reimbursement against the Obligor and Trustor's right of subrogation against any collateral or security shall be unconditionally junior and subordinate to the Beneficiary's rights against the

Obligor and to the Beneficiary's right, title and interest in such collateral or security, and Trustor's right of contribution against any other guarantor or pledgor shall be unconditionally junior and subordinate to the Beneficiary's rights against such other guarantor or pledgor.

f. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING OR ANY OTHER PROVISION HEREOF, TO THE EXTENT PERMITTED BY LAW, TRUSTOR EXPRESSLY WAIVES AND AGREES NOT TO ASSERT ANY AND ALL RIGHTS AND DEFENSES ARISING DIRECTLY OR INDIRECTLY UNDER ANY ONE OR MORE OF CALIFORNIA CIVIL CODE SECTIONS 2787 TO 2855 INCLUSIVE AND CHAPTER 2 OF TITLE 14, 2899 AND 3433 AND UNDER CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 580A, 580B, 580D AND 726.

To protect the security of this Deed of Trust, and with respect to the property above described, Trustor expressly makes each and all of the agreements, and adopts and agrees to perform and be bound by each and all of the terms and provisions set forth in subdivision A, and it is mutually agreed that each and all of the terms and provisions set forth in subdivision B of the fictitious deed of trust recorded in the book and at the page of Official Records in the office of the county recorder of the county where said Property is located, noted below opposite the name of such county, namely:

| COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alameda | 1288 | 556 | King | 858 | 713 | Placer | 1028 | 379 | Sierra | 38 | 187 |
| Alpine | 3 | 130-31 | Lake | 437 | 110 | Plumas | 166 | 1307 | Siskiyou | 506 | 762 |
| Amador | 133 | 438 | Lassen | 192 | 367 | Riverside | 3778 | 347 | Solano | 1287 | 621 |
| Butte | 1330 | 513 | Los Angeles | T-3878 | 874 | Sacramento | 5039 | 124 | Sonoma | 2067 | 427 |
| Calaveras | 185 | 338 | Madera | 911 | 136 | San Benito | 300 | 405 | Stanislaus | 1970 | 56 |
| Colusa | 323 | 391 | Marin | 1849 | 122 | San Bernardino | 6213 | 768 | Sutter | 655 | 585 |
| Contra Costa | 4684 | 1 | Mariposa | 90 | 453 | San Francisco | A-804 | 596 | Tehama | 457 | 183 |
| Del Norte | 101 | 549 | Mendocino | 667 | 99 | San Joaquin | 2855 | 283 | Trinity | 108 | 595 |
| El Dorado | 704 | 635 | Merced | 1660 | 753 | San Luis Obispo | 1311 | 137 | Tulare | 2530 | 108 |
| Fresno | 5052 | 623 | Modoc | 191 | 93 | San Mateo | 4778 | 175 | Tuolumne | 177 | 160 |
| Glenn | 469 | 76 | Mono | 69 | 302 | Santa Barbara | 2065 | 881 | Ventura | 2607 | 237 |
| Humboldt | 801 | 83 | Monterey | 357 | 239 | Santa Clara | 6626 | 664 | Yolo | 769 | 16 |
| Imperial | 1189 | 701 | Napa | 704 | 742 | Santa Cruz | 1638 | 607 | Yuba | 398 | 693 |
| Inyo | 165 | 672 | Nevada | 363 | 94 | Shasta | 800 | 633 | | | |
| Kern | 3756 | 690 | Orange | 7182 | 18 | San Diego | SERIES 5 Book 1964, Page 149774 | | | | |

The provisions hereof shall inure to and bind the parties hereto, with respect to the Property above described. Said agreements, terms and provisions contained in said Subdivision A and B, (identical in all counties and attached hereto) are by the within reference thereto, incorporated herein and made a part of this Deed of Trust for all purposes as fully as if set forth at length herein, and Beneficiary may charge for a statement regarding the obligation secured hereby, provided the charge therefor does not exceed the maximum allowed by law.

The undersigned Trustor, requests that a copy of any notice of default and any notice of sale hereunder be mailed to him at his address hereinbefore set forth.

**IN WITNESS WHEREOF**, the undersigned has executed this Deed of Trust as of the day and year first above written.

TRUSTOR:

SILVERROCK DEVELOPMENT COMPANY, LLC,
a Delaware limited liability company

By: The Robert Green Company, its Manager

By: [signature]
Name: Robert S. Green, Jr.
Its: President

STATE OF CALIFORNIA )
) ss.
COUNTY OF SAN DIEGO )

See Attached

On November 21, 2022 before me, Katharina Clare, Notary Public, personally appeared Robert S. Green, Jr, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

[signature]
Notary Public in and for said
County and State

(SEAL)

KATHARINA CLARE
Commission No. 2333572
NOTARY PUBLIC - CALIFORNIA
SAN DIEGO COUNTY
Commission Expires September 17, 2024



4890-6253-4719.1

# CALIFORNIA ALL- PURPOSE CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California }

County of San Diego }

On November 21, 2022 before me, Katharina Clare, Notary Public,
(Here insert name and title of the officer)

personally appeared Robert S. Green, Jr.,
who proved to me on the basis of satisfactory evidence to be the person(~~s~~) whose name(~~s~~) (is)/are subscribed to the within instrument and acknowledged to me that (he)/she/they executed the same in (his)/her/their authorized capacity(~~ies~~), and that by (his)/her/their signature(~~s~~) on the instrument the person(~~s~~), or the entity upon behalf of which the person(~~s~~) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

[signature]
Notary Public Signature

KATHARINA CLARE
Commission No. 2333572
NOTARY PUBLIC - CALIFORNIA
SAN DIEGO COUNTY
Commission Expires September 17, 2024

(Notary Public Seal)

## ADDITIONAL OPTIONAL INFORMATION

DESCRIPTION OF THE ATTACHED DOCUMENT

Cypress DOT
(Title or description of attached document)

(Title or description of attached document continued)

Number of Pages _____ Document Date 11/21/2022

CAPACITY CLAIMED BY THE SIGNER

- ☐ Individual (s)
- ☑ Corporate Officer
  CEO
  (Title)
- ☐ Partner(s)
- ☐ Attorney-in-Fact
- ☐ Trustee(s)
- ☐ Other ________

INSTRUCTIONS FOR COMPLETING THIS FORM

*This form complies with current California statutes regarding notary wording and, if needed, should be completed and attached to the document. Acknowledgments from other states may be completed for documents being sent to that state so long as the wording does not require the California notary to violate California notary law.*

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/~~they,~~ is /~~are~~ ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
  - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document with a staple.

2015 Version www.NotaryClasses.com 800-873-9865

**EXHIBIT A**

LEGAL DESCRIPTION OF PROPERTY

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LA QUINTA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL B:

THAT PORTION OF PARCELS 4 AND 18 OF PARCEL MAP NO. 37207, IN THE CITY OF LA QUINTA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY A MAP FILED IN BOOK 242, PAGES 72 THROUGH 87, INCLUSIVE OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

LOT "C" OF LOT LINE ADJUSTMENT NO. 2020-0010, RECORDED JULY 15, 2021 AS INSTRUMENT NO. 2021-0426711 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, STATE OF CALIFORNIA, AS DESCRIBED THEREIN.

PORTION APNS 777-490-041, 777-490-036 AND 777-490-051

PARCEL C:

THAT PORTION OF PARCEL 3 OF PARCEL MAP NO. 37207, IN THE CITY OF LA QUINTA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY A MAP FILED IN BOOK 242, PAGES 72 THROUGH 87, INCLUSIVE OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

LOT "B" OF LOT LINE ADJUSTMENT NO. 2020-0010, RECORDED JULY 16, 2021 AS INSTRUMENT NO. 2021-0428113 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, STATE OF CALIFORNIA, AS DESCRIBED THEREIN.

APN 777-490-037, 777-490-039 AND A PORTION OF 777-490-040

PARCEL G:

THAT PORTION OF PARCELS 6 AND 7 OF PARCEL MAP NO. 37207, IN THE CITY OF LA QUINTA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY A MAP FILED IN BOOK 242, PAGES 72 THROUGH 87, INCLUSIVE OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

PARCEL "A" OF LOT LINE ADJUSTMENT NO. 2020-0005, RECORDED SEPTEMBER 2, 2021 AS INSTRUMENT NO. 2021-0527060 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, STATE OF CALIFORNIA, AS DESCRIBED THEREIN.

PORTION APNS 777-490-043 AND 777-490-044

PARCEL H:

THAT PORTION OF PARCELS 6, 7 AND 8 OF PARCEL MAP NO. 37207, IN THE CITY OF LA QUINTA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY A MAP FILED IN BOOK 242, PAGES 72 THROUGH 87, INCLUSIVE OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

PARCEL "B" OF LOT LINE ADJUSTMENT NO. 2020-0005, RECORDED SEPTEMBER 2, 2021 AS INSTRUMENT NO. 2021-0527060 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, STATE OF CALIFORNIA, AS DESCRIBED THEREIN.

PORTION APNS 777-490-043, 777-490-044 AND 777-490-045

PARCEL I:

THAT PORTION OF PARCELS 7 AND 8 OF PARCEL MAP NO. 37207, IN THE CITY OF LA QUINTA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY A MAP FILED IN BOOK 242, PAGES 72 THROUGH 87, INCLUSIVE OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

PARCEL "C" OF LOT LINE ADJUSTMENT NO. 2020-0005, RECORDED SEPTEMBER 2, 2021 AS INSTRUMENT NO. 2021-0527060 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, STATE OF CALIFORNIA, AS DESCRIBED THEREIN.

PORTION APNS 777-490-044 AND 777-490-045

PARCEL J:

PARCEL 5 AND LETTERED PARCELS D, E, F AND G OF PARCEL MAP NO. 37207, AS SHOWN BY A MAP FILED IN BOOK 242, PAGES 72 THROUGH 87, INCLUSIVE OF PARCEL MAPS, IN THE CITY OF LA QUINTA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

RESERVING THEREFROM PARCELS 5 AND 12, ALL OIL, GAS, HYDROCARBON SUBSTANCES, AND MINERALS OF EVERY KIND AND CHARACTER LYING MORE THAN FIVE HUNDRED (500) FEET BELOW THE SURFACE, TOGETHER WITH THE RIGHT TO DRILL INTO, THROUGH, AND TO USE AND OCCUPY ALL PARTS OF THE PHASE 1A AND 1B PROPERTY LYING MORE THAN FIVE HUNDRED (500) FEET BELOW THE SURFACE THEREOF FOR ANY AND ALL PURPOSES INCIDENTAL TO THE EXPLORATION FOR AND PRODUCTION OF OIL, GAS, HYDROCARBON SUBSTANCES OR MINERALS FROM SAID PHASE 1A AND 1B PROPERTY OR OTHER LANDS, BUT WITHOUT, HOWEVER, ANY RIGHT TO USE EITHER THE SURFACE FROM SAID PHASE 1A AND 1B PROPERTY OR ANY PORTION THEREOF WITHIN FIVE HUNDRED (500) FEET OF THE SURFACE FOR ANY PURPOSE OR PURPOSES WHATSOEVER, OR TO USE THE PHASE 1A AND 1B PROPERTY IN SUCH A MANNER AS TO CREATE A DISTURBANCE TO THE USE OR ENJOYMENT OF THE PHASE 1A AND 1B PROPERTY, AS RESERVED BY THE CITY OF LA QUINTA, A CALIFORNIA MUNICIPAL CORPORATION AND CHARTER CITY, IN THE GRANT DEED RECORDED NOVEMBER 28, 2018, AS INSTRUMENT NO. 2018-0464674 AND RECORDED NOVEMBER 6, 2017, AS INSTRUMENT NO. 2017-0463950, BOTH OF OFFICIAL RECORDS.

APN 777-490-042, APN 777-060-078, APN 777-490-053, APN 777-490-054, APN 777-490-055

## DO NOT RECORD

The following is a copy of Subdivisions A and B of the fictitious Deed of Trust recorded in each county in California as stated in the foregoing Deed of Trust and incorporated by reference in said Deed of Trust as being a part thereof as if set forth at length therein.

A. To protect the security of this Deed of Trust, Trustor agrees:

(1) To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2) To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3) To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney=s fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4) To pay: at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior to or superior hereto; all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5) To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

B. It is mutually agreed:

(1) That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(2) That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(3) That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(4) That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention or other disposition as Trustee in its sole discretion may choose and upon payment of its fees, Trustee shall reconvey without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The Grantee in such reconveyance may be described as the person or persons legally entitled thereto.

(5) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues, and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney=s fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(6) That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as whole or separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

## DO NOT RECORD

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(7) Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(8) That this Deed applies to inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(9) That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

---

## REQUEST FOR FULL RECONVEYANCE

(To be used only when obligations have been paid in full)

TO: , Trustee

The undersigned is the legal owner and holder of the note or notes, and all other indebtedness secured by the foregoing Deed of Trust. Said note or notes, together with all other indebtedness secured by said Deed of Trust, have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel said note or notes above mentioned, and all other evidences of indebtedness secured by said Deed of Trust delivered to you herewith, together with the said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, all the estate now held by you under the same.

Dated: ______________________________

Please mail Deed of Trust,
Note and Reconveyance to

# EXHIBIT C

RECORDING REQUESTED BY

First American Title Insurance Company

AND WHEN RECORDED MAIL TO

First American Title Insurance Company
9255 Town Center Drive
Suite 200
San Diego, CA 92121

DOC # 2023-0363986
12/07/2023 10:01 AM Fees: $104.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**This document was electronically submitted to the County of Riverside for recording**
Receipted by: ELENA #448

Space above this line for recorder's use only

**Trustee Sale No. 1197779 Loan No. Title Order No.**

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).**

**This amount is $37,413,260.00 as of 12/06/2023 and will increase until your account becomes current.**

**While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.**

**Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).**

**Trustee Sale No. 1197779 Loan No. Title Order No.**

**Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.**

**To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:**

Cypress Point Holdings, LLC
c/o Michelman & Robinson
10880 Wilshire Blvd,, 19th Floor
Los Angeles, CA 90024
Attn: Edward D. Vaisbort (310) 299-5500

**If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.**

REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION. NOTICE IS HEREBY GIVEN THAT: First American Title Insurance Company is the duly appointed Trustee under a Deed of Trust dated 11/18/2022, executed by SilverRock Development Company, LLC, as trustor, to secure obligations in favor of Cypress Point Holdings, LLC, as Beneficiary recorded on November 30, 2022 as Document Number 2022-0486431 of official records in the Office of the Recorder of Riverside County, California, as more fully described on said Deed of Trust, including the note(s) for the sum of $31,464,425.00; The beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of: THE UNPAID PRINCIPAL BALANCE OF $31,464,425.00 WHICH BECAME DUE ON 09/30/2023 PLUS ACCRUED INTEREST AND LATE CHARGES.

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

DATE: 12/6/23

First American Title Insurance Company

D. B. K

David Z. Bark, Foreclosure Trustee

# EXHIBIT D

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO

First American Title Insurance Company
9255 Town Center Drive
Suite 200
San Diego, CA 92121

DOC # 2024-0111080
04/17/2024 08:51 AM Fees: $317.00
Page 1 of 7
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**This document was electronically submitted to the County of Riverside for recording**
Receipted by: CRISTINA #7700

Space above this line for recorder's use only

Trustee Sale No. 1197779 Loan No. Title Order No.
APN TRA No.

# NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 11/18/2022. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

---

On 05/16/2024 at 09:30AM, First American Title Insurance Company as the duly appointed Trustee under and pursuant to Deed of Trust recorded on November 30, 2022 as Document Number 2022-0486431 of official records in the Office of the Recorder of Riverside County, California, executed by: SilverRock Development Company, LLC, as Trustor, Cypress Point Holdings, LLC, as Beneficiary, WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH (payable at time of sale in lawful money of the United States, by cash, a cashier's check drawn by a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state). At: the bottom of stairway of building located at 849 W. Sixth Street, Corona, CA, all right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County, California describing the land therein:

See Exhibit "A" attached hereto and incorporated by reference herein

The property heretofore described is being sold "as is". The street address and other common designation, if any, of the real property described above is purported to be: Vacant Land.

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to-wit: $45,550,467.00 (Estimated)

Accrued interest and additional advances, if any, will increase this figure prior to sale.

Trustee Sale No. 1197779
Loan No.
Title Order No.
APN

The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located and more than three months have elapsed since such recordation.

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may visit the website below using the file number assigned to this case. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

Trustee Sale No. 1197779
Loan No.
Title Order No.
APN

NOTICE TO TENANT: You may have a right to purchase this property after the trustee auction pursuant to Section 2924m of the California Civil Code. If you are an "eligible tenant buyer," you can purchase the property if you match the last and highest bid placed at the trustee auction. If you are an "eligible bidder," you may be able to purchase the property if you exceed the last and highest bid placed at the trustee auction. There are three steps to exercising this right of purchase. First, 48 hours after the date of the trustee sale, you can call (858) 410-2154, or visit this internet website [iSee Link Below], using the file number assigned to this case [TS 1197779] to find the date on which the trustee's sale was held, the amount of the last and highest bid, and the address of the trustee. Second, you must send a written notice of intent to place a bid so that the trustee receives it no more than 15 days after the trustee's sale. Third, you must submit a bid so that the trustee receives it no more than 45 days after the trustee's sale. If you think you may qualify as an "eligible tenant buyer" or "eligible bidder," you should consider contacting an attorney or appropriate real estate professional immediately for advice regarding this potential right to purchase.

For information on sale dates please visit our website at:

https://foreclosure.firstam.com/#/foreclosure

DATE: 4/16/24

First American Title Insurance Company
9255 Town Center Drive
Suite 200
San Diego, CA 92121
(858) 410-2158

David Z. Bark, Foreclosure Trustee

## Exhibit "A"

PARCEL B:

THAT PORTION OF PARCELS 4 AND 18 OF PARCEL MAP NO. 37207, IN THE CITY OF LA QUINTA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY A MAP FILED IN BOOK 242, PAGES 72 THROUGH 87, INCLUSIVE OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

LOT "C" OF LOT LINE ADJUSTMENT NO. 2020-0010, RECORDED JULY 15, 2021 AS INSTRUMENT NO. 2021-0426711 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, STATE OF CALIFORNIA, AS DESCRIBED THEREIN.

PARCEL C:

THAT PORTION OF PARCEL 3 OF PARCEL MAP NO. 37207, IN THE CITY OF LA QUINTA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY A MAP FILED IN BOOK 242, PAGES 72 THROUGH 87, INCLUSIVE OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

LOT "B" OF LOT LINE ADJUSTMENT NO. 2020-0010, RECORDED JULY 16, 2021 AS INSTRUMENT NO. 2021-0428113 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, STATE OF CALIFORNIA, AS DESCRIBED THEREIN.

PARCEL G:

THAT PORTION OF PARCELS 6 AND 7 OF PARCEL MAP NO. 37207, IN THE CITY OF LA QUINTA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY A MAP FILED IN BOOK 242, PAGES 72 THROUGH 87, INCLUSIVE OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

PARCEL "A" OF LOT LINE ADJUSTMENT NO. 2020-0005, RECORDED SEPTEMBER 2, 2021 AS INSTRUMENT NO. 2021-0527060 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, STATE OF CALIFORNIA, AS DESCRIBED THEREIN.

PARCEL H:

THAT PORTION OF PARCELS 6, 7 AND 8 OF PARCEL MAP NO. 37207, IN THE CITY OF LA QUINTA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY A MAP FILED IN BOOK 242, PAGES 72 THROUGH 87, INCLUSIVE OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

PARCEL "B" OF LOT LINE ADJUSTMENT NO. 2020-0005, RECORDED SEPTEMBER 2, 2021 AS INSTRUMENT NO. 2021-0527060 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, STATE OF CALIFORNIA, AS DESCRIBED THEREIN.

PARCEL I:

THAT PORTION OF PARCELS 7 AND 8 OF PARCEL MAP NO. 37207, IN THE CITY OF LA QUINTA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY A MAP FILED IN BOOK 242, PAGES 72 THROUGH 87, INCLUSIVE OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

PARCEL "C" OF LOT LINE ADJUSTMENT NO. 2020-0005, RECORDED SEPTEMBER 2, 2021 AS INSTRUMENT NO. 2021-0527060 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, STATE OF CALIFORNIA, AS DESCRIBED THEREIN.

PARCEL J:

PARCELS 5 AND 12 AND LETTERED PARCELS E, F AND G OF PARCEL MAP NO. 37207, AS SHOWN BY A MAP FILED IN BOOK 242, PAGES 72 THROUGH 87, INCLUSIVE OF PARCEL MAPS, IN THE CITY OF LA QUINTA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM PARCELS 5 AND 12, ALL OIL, GAS, HYDROCARBON SUBSTANCES, AND MINERALS OF EVERY KIND AND CHARACTER LYING MORE THAN FIVE HUNDRED (500) FEET BELOW THE SURFACE, TOGETHER WITH THE RIGHT TO DRILL INTO, THROUGH, AND TO USE AND OCCUPY ALL PARTS OF THE PHASE 1A AND 1B PROPERTY LYING MORE THAN FIVE HUNDRED (500) FEET BELOW THE SURFACE THEREOF FOR ANY AND ALL PURPOSES INCIDENTAL TO THE EXPLORATION FOR AND PRODUCTION OF OIL, GAS, HYDROCARBON SUBSTANCES OR MINERALS FROM SAID PHASE 1A AND 1B PROPERTY OR OTHER LANDS, BUT WITHOUT, HOWEVER, ANY RIGHT TO USE EITHER THE SURFACE FROM SAID PHASE 1A AND 1B PROPERTY OR ANY PORTION THEREOF WITHIN FIVE HUNDRED (500) FEET OF THE SURFACE FOR ANY PURPOSE OR PURPOSES WHATSOEVER, OR TO USE THE PHASE 1A AND 1B PROPERTY IN SUCH A MANNER AS TO CREATE A DISTURBANCE TO THE USE OR ENJOYMENT OF THE PHASE 1A AND 1B PROPERTY, AS RESERVED BY THE CITY OF LA QUINTA, A CALIFORNIA MUNICIPAL CORPORATION AND CHARTER CITY, IN THE GRANT DEED RECORDED NOVEMBER 28, 2018, AS INSTRUMENT NO. 2018-0464674 AND RECORDED NOVEMBER 6, 2017, AS INSTRUMENT NO. 2017-0463950, BOTH OF OFFICIAL RECORDS.

THE FOLLOWING LEGAL DESCRIPTION IS SHOWN AND DESCRIBED IN SAID DEED OF TRUST AS FOLLOWS:

PARCEL B:

THAT PORTION OF PARCELS 4 AND 18 OF PARCEL MAP NO. 37207, IN THE CITY OF LA QUINTA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY A MAP FILED IN BOOK 242, PAGES 72 THROUGH 87, INCLUSIVE OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

LOT "C" OF LOT LINE ADJUSTMENT NO. 2020-0010, RECORDED JULY 15, 2021 AS INSTRUMENT NO. 2021-0426711 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, STATE OF CALIFORNIA, AS DESCRIBED THEREIN.

PARCEL C:

THAT PORTION OF PARCEL 3 OF PARCEL MAP NO. 37207, IN THE CITY OF LA QUINTA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY A MAP FILED IN BOOK 242, PAGES 72 THROUGH 87, INCLUSIVE OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

LOT "B" OF LOT LINE ADJUSTMENT NO. 2020-0010, RECORDED JULY 16, 2021 AS INSTRUMENT NO. 2021-0428113 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, STATE OF CALIFORNIA, AS DESCRIBED THEREIN.

PARCEL G:

THAT PORTION OF PARCELS 6 AND 7 OF PARCEL MAP NO. 37207, IN THE CITY OF LA QUINTA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY A MAP FILED IN BOOK 242, PAGES 72 THROUGH 87, INCLUSIVE OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

PARCEL "A" OF LOT LINE ADJUSTMENT NO. 2020-0005, RECORDED SEPTEMBER 2, 2021 AS INSTRUMENT NO. 2021-0527060 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, STATE OF CALIFORNIA, AS DESCRIBED THEREIN.

PARCEL H:

THAT PORTION OF PARCELS 6, 7 AND 8 OF PARCEL MAP NO. 37207, IN THE CITY OF LA QUINTA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY A MAP FILED IN BOOK 242, PAGES 72 THROUGH 87, INCLUSIVE OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

PARCEL "B" OF LOT LINE ADJUSTMENT NO. 2020-0005, RECORDED SEPTEMBER 2, 2021 AS INSTRUMENT NO. 2021-0527060 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, STATE OF CALIFORNIA, AS DESCRIBED THEREIN.

PARCEL I:

THAT PORTION OF PARCELS 7 AND 8 OF PARCEL MAP NO. 37207, IN THE CITY OF LA QUINTA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY A MAP FILED IN BOOK 242, PAGES 72 THROUGH 87, INCLUSIVE OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

PARCEL "C" OF LOT LINE ADJUSTMENT NO. 2020-0005, RECORDED SEPTEMBER 2, 2021 AS INSTRUMENT NO. 2021-0527060 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, STATE OF CALIFORNIA, AS DESCRIBED THEREIN.

PARCEL J:
PARCELS 5 AND LETTERED PARCELS D, E, F AND G OF PARCEL MAP NO. 37207, AS SHOWN BY A MAP FILED IN BOOK 242, PAGES 72 THROUGH 87, INCLUSIVE OF PARCEL MAPS, IN THE CITY OF LA QUINTA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

RESERVING THEREFROM PARCELS 5 AND 12, ALL OIL, GAS, HYDROCARBON SUBSTANCES, AND MINERALS OF EVERY KIND AND CHARACTER LYING MORE THAN FIVE HUNDRED (500) FEET BELOW THE SURFACE, TOGETHER WITH THE RIGHT TO DRILL INTO, THROUGH, AND TO USE AND OCCUPY ALL PARTS OF THE PHASE 1A AND 1B PROPERTY LYING MORE THAN FIVE HUNDRED (500) FEET BELOW THE SURFACE THEREOF FOR ANY AND ALL PURPOSES INCIDENTAL TO THE EXPLORATION FOR AND PRODUCTION OF OIL, GAS, HYDROCARBON SUBSTANCES OR MINERALS FROM SAID PHASE 1A AND 1B PROPERTY OR OTHER LANDS, BUT WITHOUT, HOWEVER, ANY RIGHT TO USE EITHER THE SURFACE FROM SAID PHASE 1A AND 1B PROPERTY OR ANY PORTION THEREOF WITHIN FIVE HUNDRED (500) FEET OF THE SURFACE FOR ANY PURPOSE OR PURPOSES WHATSOEVER, OR TO USE THE PHASE 1A AND 1B PROPERTY IN SUCH A MANNER AS TO CREATE A DISTURBANCE TO THE USE OR ENJOYMENT OF THE PHASE 1A AND 1B PROPERTY, AS RESERVED BY THE CITY OF LA QUINTA, A CALIFORNIA MUNICIPAL CORPORATION AND CHARTER CITY, IN THE GRANT DEED RECORDED NOVEMBER 28, 2018, AS INSTRUMENT NO. 2018-0464674 AND RECORDED NOVEMBER 6, 2017, AS INSTRUMENT NO. 2017-0463950, BOTH OF OFFICIAL RECORDS.

APN: 777-490-057; 777-490-058; 777-490-059; 777-490-060; 777-490-061; 777-490-062; 777-490-063; 777-490-064; 777-490-065; 777-490-066; 777-490-037; 777-490-068; 777-490-072; 777-490-076; 777-490-073; 777-490-074; 777-490-075; 777-490-080; 777-490-077; 777-490-078; 777-490-079; 777-490-054; 777-490-042; 777-490-055; 777-490-053